**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC J. SCHEIDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-4288 |
| | ) | |
| METROPOLITAN PIER AND | ) | Judge Robert M. Dow, Jr. |
| EXPOSITION AUTHORITY, an Illinois | ) | |
| municipal corporation; NAVY PIER, INC., | ) | |
| an Illinois corporation; JOHN GRAEBER, | ) | |
| and EDWARD MONTGOMERY, in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Metropolitan Pier and Exposition Authority's motion to dismiss [42]. For the reasons set forth below, Defendant's motion to dismiss [42] is granted. Plaintiff is given until April 17, 2017, to file an amended complaint if he believes that he can cure the deficiencies set out above.

## I.    Background[1]

On April 15, 2015, Planned Parenthood rented an event space at Navy Pier in Chicago, Illinois. Security guards employed by Navy Pier, Inc. ("NPI") were allegedly given photographs of Plaintiff Eric Scheidler and "other pro-life persons" so that they could identify them and "take action against them" if they attempted to enter Navy Pier. [1, ¶ 186.] When Plaintiff tried to enter Navy Pier, he was initially stopped by an unnamed NPI security guard, who told Plaintiff that "protesters were not allowed on Navy Pier." *Id.* ¶ 47. The guard then radioed a supervisor who authorized Plaintiff to enter Navy Pier. *Id.* ¶¶ 53–58.

---

[1] The following facts are taken from the complaint and accepted as true for the purposes of this motion.

Plaintiff then walked to the room where the Planned Parenthood event was being held. An unnamed woman outside the event asked Plaintiff if he was there to attend the event and he answered, "No." [1, ¶¶ 60–64.] Plaintiff then exited the building, but was followed by the unnamed woman. This person allegedly spoke with two NPI security guards to express her disapproval at Plaintiff passing through the area. *Id.* ¶¶ 69–70.

Shortly thereafter, Plaintiff noticed that he was being followed by a NPI security van. He was then stopped by another NPI security guard and Chicago police officer Edward Montgomery, both of whom asked to see Plaintiff's identification. According to Plaintiff, Montgomery threatened to arrest and jail Plaintiff for trespassing "if he refused to surrender his I.D." *Id.* ¶ 81. Plaintiff then "tried to get his I.D. out of his wallet," but Montgomery accused Plaintiff of "resisting arrest." *Id.* ¶ 84. Montgomery then handcuffed Plaintiff while a security guard took Plaintiff's cell phone. Montgomery escorted Plaintiff to a holding room at Navy Pier and took Plaintiff's GoPro camera, which had been recording these events. Plaintiff contends that Montgomery stated, "If Navy Pier wants [this footage] erased, it will be erased." *Id.* ¶ 98.

Sometime later, NPI personnel provided Plaintiff with a "Navy Pier Trespass Notice," [1-1, 23], which Plaintiff claims "falsely stated" that he had been protesting on Navy Pier in a restricted or private area [1, ¶ 105]. Plaintiff was then "forced to sign the false Trespass Notice while he was still their captive." *Id.* ¶ 108. Plaintiff was ultimately transported to the police station by different Chicago police officers and charged with trespassing. *Id.* ¶¶ 109–117, 138. When he was released, Plaintiff found that his GoPro's memory card had been removed, which was done to "cover up" Defendant's' "illegal actions." *Id.* ¶¶ 120–25. Plaintiff went to trial on his trespassing charges in August 2015, and was found not guilty. *Id.* ¶¶ 148–49.

On April 13, 2016, Plaintiff filed his complaint [1] against NPI, Montgomery, NPI's Security Director John Gaber, and the Metropolitan Pier and Exposition Authority ("MPEA")[2] asserting 28 claims based on these events.  Specifically, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the First Amendment, Fourth Amendment, Fourteenth Amendment and conspiracy, as well as state law claims for false arrest, false imprisonment, conversion, negligent spoliation of evidence, conspiracy, exemplary damages, declaratory relief, injunctive relief, and attorney's fees.  Defendant MPEA filed a motion to dismiss the specific claims against it.  [42.]

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly,* 550 U.S. at 558.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor.  *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d

---

[2] MPEA is the municipal corporation that owns Navy Pier and leases its operation to NPI.  [1, ¶ 11.]

614, 618 (7th Cir. 2007).  The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without converting [it] to a motion for summary judgment."  *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## III.  Analysis

Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights.  42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011).  A municipality can be held liable under Section 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy," causes the constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 536 U.S. 658, 694 (1978).  The Seventh Circuit recognizes three paths to municipal liability:  "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'"  *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)).

Defendant MPEA moves to dismiss Plaintiff's Section 1983 claims against it for violations of the Fourth Amendment (Claim Four), violations of procedural due process under the Fourteenth Amendment (Claim Seven), deprivation of liberty under the Fourteenth Amendment (Claim Ten), confiscation of Plaintiff's GoPro's "micro SD memory card" in violation of the Fourteenth Amendment (Claim Thirteen), violations of the First Amendment

(Claim Sixteen), as well as declaratory (Claim Twenty-Six) and injunctive relief (Claim Twenty-Seven). In support of dismissing all of these claims, Defendant argues that it cannot be held vicariously liable for NPI's acts based on the terms of its lease with NPI.

Plaintiff attached the lease agreement between MPEA and NPI to his complaint. [1-1, at 1–16.] The lease provides that NPI "shall have exclusive authority to operate and manage, and shall be responsible for managing and operating" Navy Pier and some of the surrounding area (the "Premises"). *Id.* at 6 (§ 6.1). NPI's duties include responsibility for "all operating expenses and capital expenditures" and "hir[ing] and employ[ing] such personnel as shall, in [NPI's] judgment, be required to operate, manage and maintain the Premises in accordance with the provisions of this Agreement and the Framework Plan, and, in connection therewith, shall have sole authority and responsibility to determine the personnel policies and practices of the Premises." *Id.* at 7 (§ 6.1.1). The lease provides that MPEA has "no responsibility to provide any security at the Premises" after December 31, 2011. *Id.* at 8 (§ 6.7.2). Based on these terms, MPEA argues that it lacks any agency relationship with NPI. And because Plaintiff's allegations relate to interactions with only NPI security offers and Chicago police officers and none of those actions can be attributed or traced back to MPEA, MPEA insists that it cannot be held liable under Section 1983 or otherwise. [42, ¶¶ 7–12.]

Plaintiff offers three main responses, which the Court takes in turn.

### A.    Overrule *Monell*

First, Plaintiff states that his argument that MPEA "is liable for the unconstitutional acts of its private agent, NPI, under the doctrine of *respondeat superior*" is only an "alternative basis

for liability."[3]  [1, ¶ 170; 48, at 8.]  Plaintiff's "alternative" argument is that "the current law on *respondeat superior* under *Monell* should be modified or reversed * * * so as to apply to a municipality such as MPEA in the context of a § 1983 claim."  [48, at 8.]  Plaintiff's reasons for reversing *Monell* are that the "lack of *respondeat superior* liability under *Monell* is a much-criticized doctrine, especially in light of government privatization" and permitting vicarious liability would be "consistent with other contexts" where a corporation is barred from "evad[ing] its own statutory liability."  *Id.*

Plaintiff's argument is a non-starter.  In 1978, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.  In light of its place in the federal judicial hierarchy, this Court cannot reverse the Supreme Court and nearly forty years of Seventh Circuit precedent adhering to *Monell* by holding that *respondeat superior* is now a viable theory of municipal liability under Section 1983.  This Court is bound to follow *Monell*, and thus Plaintiff's "alternative basis of liability" fails to state a claim as a matter of law.

### B.    Apply *Monell*:  Deliberate Indifference

Notwithstanding Plaintiff's alternative theory, Plaintiff also argues that he has stated a *Monell* claim for acts that MPEA "officially sanctions or orders."  [48, at 9.]  Plaintiff's theory is that "MPEA officially sanctioned *any and all actions of NPI* because it vested NPI with blanket authority to 'hire and employ' personnel in order to 'operate and manage' Navy Pier to support MPEA's governmental purpose."  *Id.* (internal citations omitted and emphasis in original).  In Plaintiff's words, "[*b*]*ut for* MPEA's policy" of "delegat[ing] unrestricted authority to NPI to handle Navy Pier security * * * NPI would not have been in a position of authority to stop

---

[3] The parties' briefs direct a significant amount of attention to whether NPI is MPEA's "agent" or its "lessee."  [42, ¶¶ 7–11; 48, at 1–4, 9–11; 50, at 1–2.]  For purposes of this motion, the Court accepts Plaintiff's allegation that NPI was MPEA's agent.  As will be clear, this does not get Plaintiff very far.

[Plaintiff], conspire in his arrest and detention, or issue the Notice of Trespass." *Id.* at 7 (emphasis in original). MPEA's blanket delegation of authority therefore constitutes the "moving force" behind the violations of Plaintiff's constitutional rights. *Id.*

These allegations fail to state a *Monell* claim on their face. To show that policy was the "moving force" behind an alleged injury, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Pleading that a municipality's policy is a "but for" cause of an alleged injury is insufficient as a matter of law. See *Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014) ("[T]he decision to hire [official] was not the cause of [plaintiff's] injury in anything but the 'but for' sense. It was not, in other words, the 'moving force' behind the injury.").[4] Indeed, the Supreme Court has explained at least three times that "but for" causation

---

[4] Accord *Bordanaro v. McLeod*, 871 F.2d 1151, 1162 (1st Cir. 1989) ("In order to hold the city liable for their injuries under § 1983, the plaintiffs must also establish that there was a direct causal connection between the policy * * * and the deprivations of their constitutional rights. This connection needs to rise above a mere but/for coupling between cause and effect."); *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) ("A plaintiff must also establish that the government policy or custom was the proximate cause of the injuries sustained."); *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987) ("Poof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact."); *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) ("This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it."); *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (rejecting "but for" causation for *Monell* claims); *Harris v. City of Pagedale*, 821 F.2d 499, 507 (8th Cir. 1987) ("Municipal liability under § 1983 cannot be premised on the mere fact that the unconstitutional act resulted from a municipal custom in a 'but for' sense; it must be shown that the act was taken 'pursuant to' the custom, *i.e.,* that the municipal custom was 'the moving force of the constitutional violation.'"); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*. Rather, the policy must be the proximate cause of the section 1983 injury."); see also *Spearman v. Elizondo*, 2016 WL 1730650, at *4 (N.D. Ill. May 2, 2016) ("It is not enough for a plaintiff to show merely that the custom or policy was the but-for cause of her injury."); *Orlowski v. Milwaukee Cty.*, 2016 WL 1611471, at *17 (E.D. Wis. Apr. 21, 2016) ("Plaintiff argues that the County is liable for [his son's] death, but his causation theory does not adequately account for the difference between a 'but for' cause,

is insufficient for *Monell* liability.[5]  Plaintiff must plead a "direct causal link" between the MPEA's delegation of authority and NPI's alleged unconstitutional conduct to state a *Monell* claim against the MPEA.  *Brown*, 520 U.S. at 404; see also *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("[F]or liability to attach in [a failure-to-train case] the identified deficiency in a city's training program must be closely related to the ultimate injury.").  The claim that MPEA is liable under *Monell* for "any and all" of NPI's actions by simply virtue of its lease fails to plead this direct nexus.[6]

Even if Plaintiff could overcome this deficiency, his *Monell* claim would fall short in other respects.  Plaintiff does not contend that the MPEA-NPI lease is facially invalid—such as by directing NPI employees to violate the constitution in some manner.  See *Brown*, 520 U.S. at 404–05.  Instead, "[P]laintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate [his] rights," which means he "must

---

which is not sufficient to impose liability under *Monell*, and a 'moving force' or proximate cause of a constitutional violation.").

[5] See *Brown*, 520 U.S. at 410 ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense:  But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury.  To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267–68 (1987) ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy.  Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate *Monell*'s distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's *own* constitutional violations."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.11 (1986) (noting that a majority of the Supreme Court in *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), "found plaintiff's submission inadequate because she failed to establish that the unconstitutional act was taken *pursuant to* a municipal policy rather than simply resulting from such a policy in a 'but for' sense").

[6] "[T]he absence of a written policy does not wholly exempt a municipality from liability."  *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993).  "[I]n situations that call for procedures, rules, or regulations, the failure to make a policy itself may be actionable."  *Id.* Nevertheless, "the quantum of evidence needed is considerably greater where, as here, the particular customs that [Plaintiff] claim[s] resulted in [his] injuries involve a course of municipal inaction that is a good deal removed from the constitutional deprivation alleged."  *Jones v. City of Chi.*, 787 F.2d 200, 204–05 (7th Cir. 1986).  "A plaintiff that faults a municipality's inaction must show that there is an 'extremely high degree' of municipal culpability."  *Id.* at 205.  Plaintiff did not plead any such facts here.

demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407; [48, at 9]. "[D]eliberate indifference is a stringent standard of fault." *Brown*, 520 U.S. at 410. "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. The "deliberative indifference" must rise to the level of a custom or policy, which can occur in two circumstances. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

First, "a municipality shows deliberate indifference when it fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation." *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir. 2003); accord *Jenkins*, 487 F.3d at 492. It must be true that "'a reasonable policymaker [would] conclude that the plainly obvious consequences' of the [municipality's] actions would result in the deprivation of a federally protected right." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Brown*, 520 U.S. at 411); see also *Frake v. City of Chi.*, 210 F.3d 779, 782 (7th Cir. 2000) (stating that a finding of deliberate indifference requires a showing that policymakers "were aware of a substantial risk" of a constitutional violation and "failed to take appropriate steps to protect [plaintiff] from a known danger"). Second, "a municipality shows deliberate indifference if it fails to provide further training after learning of a pattern of constitutional violations." *Dunn*, 347 F.3d at 646; accord *Jenkins*, 487 F.3d at 492. "[N]ormally random acts or isolated incidents are insufficient to establish a custom." *Gable*, 296 F.3d at 538 (citation and internal quotations omitted).

Plaintiff's complaint invokes both theories, but neither is sufficiently alleged. Plaintiff asserts that MPEA "has a pattern of deliberate indifference to the public's exercise of their constitutional rights on Navy Pier and Gateway Park, as evidence by one or more lawsuits filed in this federal district." [1, ¶ 167.] That allegation is far too vague and conclusory to infer it is

plausible that MPEA knew of a *pattern* of *relevant* constitutional violations involving NPI and failed to act. There is no reference to the parties to those lawsuits, the underlying allegations, when suits were filed, how they were resolved, or even which Constitutional rights were implicated. Plaintiff does not plead that the conduct at issue in those suits was even similar to what Plaintiff alleges occurred here. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Pleading that an unspecified number of lawsuits filed at unspecified times involving unspecified actors and unspecified allegations that violate unspecified rights does not plead sufficient factual allegations to show is plausible that MPEA acted with deliberate indifference regarding NPI's security practices in the face of a "pattern of constitutional violations." *Dunn*, 347 F.3d at 646.

Nor does Plaintiff's hazy allegation that there were "one or more lawsuits" allege a number of incidents by which one could infer a "pattern" of relevant unconstitutional conduct. The closest Plaintiff comes is his allegation that "prior litigation involving a different victim" alleged that NPI maintained a "policy, custom and practice of confiscating video recording equipment," and MPEA was aware of this "policy" because NPI was sued.[7] [1, ¶¶ 189–190.] There is no factual content to this allegation beyond asserting that there is a generalized policy of confiscation that applies in unspecific circumstances and was referenced in an unspecified "prior litigation." That is insufficient. See, *e.g.*, *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging 'widespread practices,' 'customs,' and 'unofficial policies,' Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim. Plaintiff

---

[7] Plaintiff also alleges that "MPEA maintains a policy, custom, or practice of disfavoring political viewpoints, as documented by prior litigation in this district by a different victim of MPEA's unconstitutional conduct." [1, ¶ 188.] It is unclear what a policy of "disfavoring political viewpoints" means, how such "disfavoring" translates into a policy of unconstitutional conduct relevant here, or how that "prior litigation" involving MPEA makes the existence of a relevant policy plausible in this case where Plaintiff alleges that MPEA delegates *all* of Navy Pier's security responsibilities to NPI and MPEA is deliberately indifferent to the consequences that flow from *NPI*'s conduct.

names the wrongs she suffered and alleges that they resulted from a policy or custom. These bare allegations of a policy or custom are not entitled to the presumption of truth."). But even if credited, this prior lawsuit would still not be enough to show a "pattern" of confiscation and failing to return video recording equipment by protesters evidencing a widespread custom. See *Gable*, 296 F.3d at 538 (finding "three incidents were too few" to show a widespread custom). "[T]o show a 'permanent and well settled' practice of excessive force, [Plaintiff] must point to 'more than one instance, or even three,' of such misconduct." *Young v. Vill. of Romeoville*, 2011 WL 1575512, at *2 (N.D. Ill. Apr. 27, 2011) (citation omitted). He has not done so.

Plaintiff also alleges that the MPEA's "delegation of discretion" to NPI "exhibits deliberate indifference to the constitutional rights of the public" because "MPEA reasonably should have known that NPI private security personnel would likely violate" someone's constitutional rights and the "need for a policy or policies restricting NPI's actions" was "obvious." [1, ¶¶ 162–68.] "A nebulous assertion of the need for more or better training does not, however, satisfy the deliberate-indifference standard." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1305 (D.N.M. 2015). To state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "The required level of factual specificity rises with the complexity of the claim." *Id.* at 616–17. "A more complex case * * * will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Here, Plaintiffs' *Monell* claims are high on the complexity scale—consisting of multiple "policies" that violate

multiple constitutional rights and purportedly corrupt all of NPI's interactions with protestors. But Plaintiff does not plead any facts suggesting why it would be "plainly obvious" that allowing NPI to handle Navy Pier security would result in a "substantial risk" that visitors to Navy Pier would have their rights under the First, Fourth, and Fourteenth Amendments violated. See, *e.g.*, *Hall v. City of Chi.*, 2012 WL 6727511, at *9 (N.D. Ill. Dec. 28, 2012) (dismissing *Monell* claim based on "City's failure to train and failure to monitor adequately and discipline officers" where "Plaintiffs fail to allege that the City ever received information of constitutional violations and after receiving such information, declined to take any action to correct such violations").

Merely asserting that there will be "predictable violations" of the Constitution because "MPEA failed to adopt and implement any policy or policies limiting the actions of security personnel" does not make that allegation plausible. [1, ¶ 164]; see, *e g.*, *Wilson v. Montano*, 2016 WL 7887999, at *4 (D.N.M. Dec. 20, 2016) (dismissing claim because "it is not 'highly predictable' or 'plainly obvious' that failing to train or supervise [local] officers on filing timely criminal complaints will result in a violation of the right to a prompt probable cause determination"); *Paul v. Bradshaw*, 2013 WL 12084298, at *9 (S.D. Fla. Aug. 7, 2013) (dismissing negligent hiring claim because Plaintiff failed to plead how the "'plainly obvious' result" of the hiring would be "the deprivation of a third party's federally protected rights"). In failure-to-train Section 1983 cases—which offer some analogy to Plaintiff's "lack of a policy" theory—courts have held that deliberate indifference can be shown if "constitutional errors would result with such highly predictable frequency as to render the unconstitutional consequences of that program 'patently obvious.'" *Bonner v. O'Toole*, 2015 WL 1586661, at *14 (N.D. Ill. Apr. 3, 2015) (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)). In that circumstance, "[t]he frequency of constitutional errors must be '*so* predictable that failing to train

* * * amounted to [a] *conscious disregard*' for citizens' rights." *Id.* Plaintiff has not offered any allegations of this sort and the Court cannot draw such inference regarding the predictable frequency of constitutional violations based solely on the fact that MPEA outsources operation of Navy Pier to NPI.

### C.    Non-Delegable Responsibilities

Plaintiff's final argument for Section 1983 liability is that "a government entity 'cannot shield itself from § 1983 liability by contracting out its duties.'" [48, at 9.] Based on this quotation, Plaintiff argues that MPEA cannot delegate its responsibilities for security to NPI and it remains "jointly and severally liable" for all of NPI's actions based on its continuing financial and contractual relationship with NPI. *Id.* at 9–10.

Plaintiff appears to take this quote from *King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012).[8] However, he omits the remainder of the sentence from *King* that provides the essential context underlying this doctrine: "The County cannot shield itself from § 1983 liability by contracting out its duty *to provide medical services*" to inmates under the Eighth and Fourteenth Amendments. *Id.* at 1020 (emphasis added). That principle stems directly the Supreme Court's holding in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103.

In fact, almost all of the other cases that Plaintiff cites [48, at 11–13] reflect the premise that the "Eighth Amendment creates a continuing obligation on counties to provide adequate medical care despite contracting out inmate medical care to third parties." *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 266 (M.D.N.C. 2015); see also *Belbachir v. Cty. of McHenry*, 726 F.3d 975 (7th Cir. 2013) (county contractor providing jail medical services); *McGill v. Corr. Healthcare Companies, Inc.*, 2014 WL 5423271, at *6 (D. Colo. Oct. 24, 2014) ("The state's

---

[8] Plaintiff cites *Jones* for this quote [48, at 9], but this language does not appear in that case.

duty to provide adequate medical care is non-delegable."); *Wilson v. Douglas Cty.*, 2005 WL 3019486, at *1 n.1 (D. Neb. Nov. 10, 2005) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."); *Irby v. Erickson*, 2004 WL 783103, at *2 (N.D. Ill. Jan. 16, 2004) (same, but applying the Fourteenth Amendment to pretrial detainees). The other three cases Plaintiff cites also involve conduct in jails and prisons. See *Ford v. City of Boston*, 154 F. Supp. 2d 131, 148 (D. Mass. 2001) (jail searches); *Deaton v. Montgomery Cty.*, 989 F.2d 885, 890 (6th Cir. 1993) (jail searches); *Herrera v. Cty. of Santa Fe*, 213 F. Supp. 2d 1288, 1291 (D.N.M. 2002) (private company operating a detention center).[9]

This case does not involve the failure to provide medical care, unconstitutional conditions of confinement, or allegedly impermissible searches and seizures in the incarceration context. It does not involve Eighth Amendment or any context analogous to a prison. Plaintiff cites no authority for the proposition that there are "non-delegable" constitutional duties for a recreational and commercial center like Navy Pier. And he does not cite a single court that has applied this doctrine or line of cases to hold that municipalities are responsible under Section 1983 for the

---

[9] Plaintiff does cite three other constitutional cases in this section of his brief [48, at 11–13], but they lack any obvious relationship to his non-delegable duty theory of *Monell*. Both *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), and *Morfin v. City of East Chicago*, 349 F.3d 989 (7th Cir. 2003), addressed when private individuals could be deemed state actors. Neither case concerned a *Monell*-like claim. The other, *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), noted that "special difficulties can arise" when a "municipal policymaker has delegated his policymaking authority to another official." *Id.* at 126. One the one hand, imposing liability merely for an exercise of discretion by an employee would be *respondeat superior* liability, yet if "a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." *Id.* The Court then noted two "principles" that "should provide useful guidance" to help "resolve this conundrum." *Id.* at 126–27. One principal was that *Monell* liability would exist where the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id.* at 127. The other, which is not relevant here, concerned when an "official's discretionary decisions are constrained by policies not of that official's making." *Id.* Thus, *Praprotnik* recognizes that Plaintiff's avenue for pursuing municipal liability must be through *Monell*, not around it.

actions of private security personnel in such a setting. The Court is not persuaded that this doctrine can be extended to this context, and Plaintiff has failed to make such a showing here.

Accordingly, Plaintiff's Section 1983 claims against MPEA for violations of the First Amendment (Claim Sixteen), the Fourth Amendment (Claim Four), the Fourteenth Amendment (Claims Seven, Ten, and Thirteen), and his claims for declaratory (Claim Twenty-Six) and injunctive relief (Claim Twenty-Seven) are dismissed for failure to state a claim.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss [42]. Plaintiff is given until April 17, 2017, to file an amended complaint if he believes that he can cure the deficiencies set out above.

Dated: March 16, 2017

_____
Robert M. Dow, Jr.
United States District Judge