# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ERIC J. SCHEIDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-4288 |
| | ) | |
| METROPOLITAN PIER AND | ) | Judge Robert M. Dow, Jr. |
| EXPOSITION AUTHORITY, NAVY | ) | |
| PIER, INC., JOHN GRAEBER, and | ) | |
| EDWARD MONTGOMERY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Scheidler ("Plaintiff") brings this civil rights action against Defendant Edward Montgomery ("Defendant") for unlawful arrest in violation of the Fourth Amendment (Count 1), negligent spoliation of evidence in violation of Illinois state law (Count 23), conspiracy in violation of 42 U.S.C. § 1983 and Illinois common law (Count 24), exemplary damages (Count 25), and attorneys' fees and costs (Count 28). All other defendants and claims have already been dismissed with prejudice pursuant to a written settlement agreement. See [62], [63]. Currently before the Court are (1) Plaintiff's motion for partial summary judgment [69] and (2) Defendant's motion for summary judgment on all claims [73]. For the reasons explained below, Plaintiff's motion [69] and Defendant's motion [73] are both denied. This case is set for further status hearing on April 16, 2019 at 9:00 a.m.

## I.     Background

The Court takes the relevant facts primarily from the parties' Local Rule 56.1 statements, [71], [74], [82], [83], [84], and [99]. The following facts are undisputed except where a dispute is noted.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a). Venue in this judicial district is proper because the events alleged in Plaintiff's complaint occurred within the Northern District of Illinois.

Plaintiff resides in Kane County, Illinois. Defendant, who is being sued in his individual capacity, has at all relevant times been employed by the City of Chicago ("City") as a police officer with the Chicago Police Department ("CPD"). Defendant has been assigned to CPD's Navy Pier foot patrol post for approximately nine years during his career.

On April 15, 2015, Defendant was on duty assigned to the Navy Pier foot patrol post. A member of the Navy Pier security personnel contacted Defendant via radio and requested that Defendant respond to the front of Navy Pier. According to Defendant's deposition testimony, Navy Pier security personnel told him that there "was a disturbance of some type of nature or there was a guy who was refusing to identify himself and they needed him to be identified and could I respond." [74-4] at 39 (Tr. 78:8-11). Defendant was provided with a description of the individual and his path of travel. Defendant was aware that Navy Pier security personnel would typically attempt to identify an individual when they wanted to either (1) issue a trespass notice in order to bar the individual from the Pier or (2) document an individual's activity and location for security purposes given Navy Pier's high-risk location and unique public safety concerns.

As Defendant approached the northwest corner of Navy Pier, he observed Plaintiff on the north side of the pier walking westbound on Grand Avenue with Navy Pier security personnel following him. A security guard approached Plaintiff and asked him for his identification. Plaintiff refused to produce his identification. Plaintiff continued to walk westbound and the security guard followed him.

The paths of Plaintiff, the security personnel who were following him, and Defendant then converged. Defendant knew and was familiar with the security personnel. It is disputed what security personnel told Defendant when the parties came together. According to Defendant's testimony, security personnel informed him that Plaintiff had trespassed by entering a restricted area of Navy Pier and returning to the restricted area after being told to leave. See [74-4] at 44-46 (Tr. 83:7-85:10); 48 (Tr. 87:2-18); 61-62 (Tr. 170:19-171:4); 73 (Tr. 184:6-12); see also [71-1] at 115-17 (Tr. 115:23-117:5).[1]

According to Plaintiff's affidavit, security personnel did not tell Defendant at this time (or at any time prior to Defendant placing Plaintiff in handcuffs and arresting him) that Plaintiff had been trespassing, that he had been in a restricted area or more specifically the Grand Ballroom, or that he had been asked to leave Navy Pier.[2] Instead, according to Plaintiff, the only issue that security personnel or Defendant raised was Plaintiff's refusal to provide documents to identify himself. According to Plaintiff, Defendant "insisted it was Illinois law that I provide documents of identification" and "threatened that if I did not produce my documentation he would arrest me for trespass." [84-1] at 2-3, ¶ 4.

---

[1] Plaintiff contends that Defendant admitted at his deposition that he was not told until after Plaintiff was placed under arrest that Plaintiff had been trespassing. However, the cited testimony, see [71-1] at 112 (Tr. 111:9-13), is ambiguous and in many other places in his deposition Defendant testified that security personnel told him that Plaintiff had been trespassing when the parties met at the front of Navy Pier, before Plaintiff was placed under arrest.

[2] Defendant objects to Plaintiff's affidavit on the basis of foundation because Plaintiff did not have a Navy Pier radio to hear the radio communication between security personnel and Defendant. However, the record indicates that security personnel were following Plaintiff at the time the communication was made, making it possible that Plaintiff could have heard the security personnel's side of the communication with Defendant. Further, Defendant's testimony does not establish that he was told via radio that Plaintiff had been trespassing; instead, Defendant testified that he didn't "know if it was a disturbance or it was a trespass" when he met up with Plaintiff and security personnel. [74-4] at 39 (Tr. p. 78:16-18).

After security personnel and Defendant spoke, Defendant approached Plaintiff. Plaintiff testified that he expressed that he wished to speak with Defendant and Defendant directed Plaintiff toward a canopy. Plaintiff testified that he voluntarily walked over to the indicated area. Defendant requested Plaintiff's identification. Plaintiff testified that he responded to Defendant's request by stating "I'm happy to identify myself, but I do not want to give you my ID." [74] at 6. Defendant told Plaintiff that unless he produced his identification, Plaintiff would be arrested. Plaintiff refused to produce his identification and pulled out his mobile telephone to call his attorney. Security personnel informed Defendant that they wished to sign a criminal complaint against Plaintiff for trespass.

Sophia Hardy ("Hardy"), Navy Pier's security supervisor, signed two criminal complaints against Plaintiff for trespass in violation of Illinois law. Each complaint states that Plaintiff "knowingly entered upon the land other than a residence of Navy Pier located at 600 E. Grand Ave. after receiving prior to such entry, notice from the agent Sophia Hardy that such entry was forbidden." [74-6] at 25, 26. Defendant knew Hardy and had never known her to be untruthful or not credible. Defendant told Plaintiff he was under arrest and handcuffed Plaintiff. Defendant arrested Plaintiff based on Hardy's criminal complaints. It is disputed whether Plaintiff would have been arrested if he had produced identification.

Plaintiff was taken to a security room inside Navy Pier. While Defendant was escorting Plaintiff to the security room, Plaintiff told Defendant that he had permission to walk on the pier, that he did not go anywhere he was not supposed to go, and that he did not do anything wrong. Defendant removed Plaintiff's GoPro camera and placed it and Plaintiff's iPhone on the table in the room. According to Defendant, he did not remove the camera's micro SD card. Plaintiff disputes this on the basis that Defendant was the last known person with possession, custody, and

control of the camera. Defendant emptied Plaintiff's pockets and performed a search pursuant to arrest, which included the removal of personal property and a protective pat down.

Plaintiff testified that he continued to explain to Defendant that he had permission to be on the pier and that "this is ridiculous." [74] at 8. Plaintiff testified that Defendant stated, "You know, all you had to do was give me your ID and none of this would have happened." *Id*. Plaintiff told Defendant that he needed to turn off his camera because it was recording on a loop and he needed to make certain that his evidence of getting permission to walk onto the pier was not recorded over during the loop. Plaintiff testified that Defendant stated in response, "If Navy Pier wants it erased, it will be erased." *Id*. Plaintiff told Defendant "that would be destroying evidence." *Id*. at 9; see also [84] at 8. Defendant testified that he was not familiar with Plaintiff's GoPro camera and that he believed he would need a search warrant in order to access footage to determine if there was in fact evidence on the camera. Defendant also testified that Plaintiff was not allowed to handle his GoPro camera post-arrest because potential evidence could have been destroyed.

Plaintiff testified that John Graeber ("Graeber"), Navy Pier's safety and security director, then arrived at the doorway of the security room. Plaintiff testified he recognized Graeber from previous protests at Navy Pier and told Graeber that "this is ridiculous," that he had permission to be walking on the pier, [74] at 9, that he was arrested, and that he "wasn't doing anything wrong." [84] at 8. Plaintiff testified that Graeber responded "Do you think I'm stupid" and walked away. [74] at 9. Plaintiff testified that Graeber and Defendant did not communicate with one another while Graeber was at the doorway of the security room.

Defendant presented Plaintiff with a notice of trespass. Plaintiff was transported to a Chicago Police Station by two different CPD officers. According to Defendant, Plaintiff's

personal belongings were placed in a prisoner property bag and transported to the Chicago Police Department's 18th District Police Station; Plaintiff disputes this based on his allegation that the micro SD card was removed from his camera at Navy Pier, the police station, or somewhere in between. Plaintiff received two bags with his personal property when he was released from the police station. The day after his arrest, Plaintiff discovered that his micro SD card was missing from his camera.

Navy Pier charged Plaintiff with criminal trespass. On August 3, 2015, Plaintiff was found not guilty of trespass. Plaintiff subsequently filed this civil lawsuit against the Metropolitan Pier and Exposition Authority ("MPEA"), Navy Pier, Inc. ("NPI"), Graeber, and Defendant on April 13, 2016. In May 2017, Plaintiff, MPEA, NPI, and Graeber filed a joint stipulation of dismissal of those three defendants with prejudice pursuant to a written settlement agreement. Currently before the Court are Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment on all claims.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by *** citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the parties have submitted cross-motions for summary judgment, the Court takes the motions "one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Market, LLC v. Village of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

III.    **Analysis**

A.    **Section 1983 False Arrest**

In Count 1 of the Complaint, Plaintiff alleges that Defendant violated his rights under the Fourth Amendment to the United States Constitution by arresting him for trespass without probable cause to believe that he had committed a criminal offense. To prove a claim for false arrest, a plaintiff must come forward with evidence that the defendant arrested the plaintiff; that the defendant did not have probable cause to arrest the plaintiff; and that the defendant acted under color of law. See Seventh Circuit Pattern Civil Jury Instruction 7.07 (rev. Aug. 2017). In this case, there is no dispute that Defendant arrested Plaintiff while acting under the color of law as an

on-duty CPD police officer.  The only issue before the Court is whether the arrest was supported by probable cause.

"'Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983.'"  *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (quoting *Stokes v. Board of Education of City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010)). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed *** an offense.'"  *Id*. at 908 (quoting *Stokes*, 599 F.3d at 622).  The probable-cause standard is objective and "'relies on the common-sense judgment of the officers based on the totality of the circumstances.'"  *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)).

"When, as here, the defendant[] ha[s] raised a qualified immunity defense to a false-arrest claim," the Court "'review[s] to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed'"—*i.e.* whether "arguable probable cause" existed.  *Fleming v. Livingston County*, 674 F.3d 874, 878 (7th Cir. 2012) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).  "Arguable probable cause is established 'when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'"  *Id*. at 880 (quoting *Humphrey*, 148 F.3d at 725).

Where qualified immunity applies, it provides "immunity from suit, not just a defense to liability."  *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Pearson v. Callahan*, 555

8

U.S. 223, 231 (2009)). "Though it is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune." *Id*. "'Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury.'" *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 907 (N.D. Ill. 2016) (quoting *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008)). Nonetheless, in cases where there are disputed questions of material fact that bear on the qualified immunity analysis, a "trial is required before a determination can be made as to whether [the defendant] is entitled to qualified immunity." *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008).

Plaintiff and Defendant have both moved for summary judgment on the unlawful arrest claim. Both of their motions are denied due to the existence of at least one material factual dispute that a jury must be allowed to resolve: whether Defendant was told by Navy Pier security personnel prior to arresting Plaintiff that Plaintiff had been found trespassing in a restricted area of Navy Pier.

The Court considers Plaintiff's motion first. Construing the disputed facts and drawing all inferences in Defendant's favor, a jury could reasonably conclude that Defendant had probable cause to place Plaintiff under arrest for trespass or, at the very least, that Defendant had arguable probable cause and therefore is entitled to qualified immunity. According to Defendant's testimony, Navy Pier security personnel told him that Plaintiff had been in a restricted area of Navy Pier and that he returned to the restricted area after being told to leave. Hardy signed a complaint against Plaintiff for trespass. It was not necessary for Defendant to have witnessed the alleged trespass "first-hand," because "[a] report by a single, credible witness will suffice as a basis for" knowledge that Defendant "committed or was committing trespass." *Kampinen v. Martinez*, 102 Fed. Appx. 492, 497 (7th Cir. 2004) (defendant officers "possessed probable cause"

9

to arrest plaintiff for trespass "given the criminal complaint initiated by a Mercantile Exchange employee who reported that [plaintiff] was found in a restricted area and had refused to leave when asked").

Plaintiff contends that Defendant had a duty to conduct further investigation before arresting him. Although a complaint from "'a single witness is generally sufficient to establish probable cause,'" this is not the case if "'the officer has reason to question the witness' account.'" *Bonds v. Fizer*, 713 F. Supp. 2d 752, 761 (N.D. Ill. 2010) (quoting *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007)). When all factual disputes are resolved in Defendant's favor, a reasonable jury could conclude that Defendant had no reason to question security personnel's account that Plaintiff had been found trespassing in a restricted area or to perform any further, independent, investigation. Defendant knew the Navy Pier security personnel who gave him the information and had no reason to question their credibility or truthfulness. Defendant also understood what the term restricted area meant and knew that Navy Pier had restricted areas that were closed to the public. Compare *Williams v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 553 F. Supp. 2d 1041, 1047 (S.D. Ill. 2008) (holding on summary judgment that report of casino security officer of an incident involving trespass taking place in the casino was not the type of report that would cause a reasonable officer to be suspicious and perform additional investigation). Plaintiff also emphasizes deposition testimony from Defendant suggesting that Defendant would not have arrested Plaintiff if he had produced identification. But this does not conclusively demonstrate a lack of probable cause to believe that Plaintiff was trespassing. If Plaintiff was found trespassing, Navy Pier had a choice to pursue charges or not. It is not surprising that, if Plaintiff had cooperated by producing identification, Navy Pier would have been less likely to press charges. And if Defendant was told by Navy Pier personnel that Plaintiff was trespassing in

10

a restricted area, then he had at least arguable probable cause to place Plaintiff under arrest after Plaintiff continually refused to show identification.

Defendant's motion for summary judgment is also denied. Resolving all factual disputes and drawing all inferences in Plaintiff's favor, a reasonable jury could conclude that Defendant lacked probable cause to arrest Plaintiff. According to Plaintiff's declaration, Navy Pier security personnel never told Defendant that Plaintiff had been trespassing or had been in a restricted area. Plaintiff had at least an arguable basis for knowing this, because the Navy Pier security personnel were following him when they made their radio call to Defendant, and all of the parties were together when they converged at the front of Navy Pier. If Plaintiff is to be believed, he was in a position to have heard security tell Defendant that he had been trespassing or in a restricted area, but security said no such thing. Also, Defendant could not remember in his deposition exactly what security told him over the radio. Defendant testified that he understood Navy Pier to be public property and therefore would not have had any reason to presume that Plaintiff had been trespassing unless security personnel told him that Plaintiff had been in a restricted area.

Although Hardy's written complaints use the term "trespass," they simply parrot the language of the trespass statute and identify Plaintiff's location as "Navy Pier" generally—not a restricted area of Navy Pier or any specific location (such as the Grand Ballroom) that Defendant knew to be a restricted area. Given Defendant's knowledge that Navy Pier was public property, the complaints contained no facts upon which Defendant could have concluded that Plaintiff had committed a trespass. While a police officer generally has "'no constitutional obligation to conduct any *further* investigation in the hopes of uncovering potentially exculpatory evidence,'" he must first have "'discovered sufficient facts to establish probable cause'" before this principle applies. *Phillips v. Allen*, 743 F. Supp. 2d 931, 942 (N.D. Ill. 2010) (emphasis added) (quoting

*Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir. 1989)). Moreover, taking Plaintiff's version of events as true, a jury could conclude that a reasonable officer would have been suspicious of a complaint of trespass in light of the fact that until Plaintiff was arrested, the focus of security personnel and Defendant had been on Plaintiff's refusal to provide identification, rather than on any alleged trespass in a restricted area.

Defendant's entitlement to qualified immunity cannot be resolved at the summary judgment stage, either. "There is no question that [Plaintiff]'s constitutional right to be free from arrest without probable cause was clearly established at the time of the incident," and further factual development is necessary before the Court can determine whether "'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as [Defendant] *could* have reasonably believed that probable cause existed in light of well-established law.'" *Fleming*, 674 F.3d at 879-80 (quoting *Humphrey*, 148 F.3d at 725). Accepting Plaintiff's version of the facts as true, it is difficult to see how any officer, possessing Defendant's knowledge that Navy Pier is public property, could have reasonably believed that Plaintiff could be arrested for trespass merely for being on Navy Pier. Notably, Defendant does not argue that Navy Pier has a legal right to exclude members of the public from entering the pier for any reason Navy Pier chooses. Nor does Defendant contend that Plaintiff's refusal to provide identification was itself illegal or that Defendant believed it was.

For these reasons, the Court concludes that neither side is entitled to summary judgment on Plaintiff's Section 1983 false arrest claim.

**B.    Conspiracy**

In Count 24 of his complaint, Plaintiff alleges that Defendant committed conspiracy in violation of 42 U.S.C. § 1983 and Illinois common law by "by reaching an understanding [with

Graeber and NPI] to act in concert with each other to deprive [Plaintiff] of his *** constitutional rights." [1] at 30. "To prevail on a conspiracy claim, 'the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511.

Defendant (but not Plaintiff) moves for summary judgment on the conspiracy claim. First, Defendant argues that Plaintiff cannot establish an underlying constitutional violation and therefore cannot pursue a conspiracy claim. This argument fails because, for the reasons explained above, Defendant is not entitled to summary judgment on the Fourth Amendment false arrest claim.

Second, Defendant argues that there is neither direct nor circumstantial evidence of an agreement to deprive Plaintiff of his Fourth Amendment rights. However, Defendant fails to develop this argument, see [75] at 10, and Plaintiff identifies a number of facts from which a reasonable jury could infer that Defendant conspired with NPI security personnel to have him arrested without probable cause to believe that he had actually committed a trespass in a restricted area of Navy Pier. According to Plaintiff, he never entered a restricted area of Navy Pier and Navy Pier security personnel never told Defendant, prior to Defendant placing Plaintiff under arrest, that Plaintiff had been found in a restricted area or was trespassing. Nevertheless, according to Plaintiff, Defendant threatened to arrest Plaintiff for trespass if he did not produce identification. When Plaintiff refused, Hardy wrote out complaints for "trespass," even though the complaints

contained no factual basis for that charge. Instead, they stated only that Plaintiff was on Navy Pier, which is public property. Plaintiff also points to testimony from Defendant suggesting that, if Plaintiff had produced identification, he would not have been arrested. These facts, taken together and viewed in the light most favorable to Plaintiff, could lead a reasonable jury to conclude Defendant and NPI personnel had an agreement to arrest Plaintiff for trespass based on his refusal to produce identification, rather than based on their belief that Plaintiff had, in fact, committed a trespass.

## C. Negligent Spoliation

In Count 23 of his complaint, Plaintiff alleges a claim for negligent spoliation under Illinois tort law. Plaintiff alleges that Defendant had a duty, but failed, to preserve his camera's micro SD card and Navy Pier video security footage, which were material to foreseeable civil and criminal actions involving Plaintiff's arrest, detention, and prosecution. Plaintiff further alleges that the breach of Defendant's duty of care proximately caused him damages.

"Illinois does not recognize an independent cause of action for spoliation of evidence." *Hartmann Realtors v. Biffar*, 13 N.E.3d 350, 356 (Ill. App. 2014). Instead, "an action for negligent spoliation of evidence is recognized under general negligence law." *Id*.; see also *Allstate Ins. Co. v. St. Anthony's Spine & Joint Institute, P.C.*, 691 F. Supp. 2d 772, 796 (N.D. Ill. 2010). "To prove a spoliation claim, a plaintiff must demonstrate that: '(1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages.'" *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016) (quoting *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012)). The Illinois Supreme Court has advised

that it is proper for "a single trier of fact [to] be allowed to hear an action for negligent spoliation concurrently with the underlying suit on which it is based," since "[a] single trier of fact [is] in the best position to resolve all the claims fairly and consistently." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 272 (Ill. 1995); see also *Brobbey v. Enterprise Leasing Co. of Chicago*, 935 N.E.2d 1084, 1098–99 (Ill. App. 2010). For instance, "[i]f a plaintiff loses the underlying suit, only the trier of fact who heard the case would know the real reason why." *Boyd*, 652 N.E.2d at 272. "This factor is important because a spoliator may be held liable in a negligence action only if its loss or destruction of the evidence caused a plaintiff to be unable to prove the underlying suit." *Id*.

Plaintiff and Defendant both move for summary judgment on the negligent spoliation claim. Plaintiff's motion must be denied, because there is no way for the Court to determine at this point whether Plaintiff will be "unable to prove" his underlying suit against Defendant on any of his claims. As to Plaintiff's suit against the defendants who have already been dismissed from this action, Plaintiff did not lose that suit—instead, he settled with those defendants and dismissed his suit pursuant to stipulation. Plaintiff has identified no precedent indicating that settling should be consider a "loss" for purposes of a negligent spoliation claim, and the Court sees no reason why that should be the case. And Plaintiff was found not guilty in the underlying criminal prosecution.

Defendant's motion for summary judgment is denied, as well. Defendant argues that Plaintiff will be unable to establish that the alleged negligent spoliation of the video evidence proximately caused Plaintiff to be unable to prove his claims against Defendant, because Defendant is entitled to summary judgment on the underlying claims, for the reasons explained in his summary judgment motion. Since the Court is denying Defendant summary judgment on the underlying claims, it cannot say at this point that Plaintiff will be unable to prove causation on his negligent spoliation claim if he takes the underlying claims to trial and loses.

### D.    Remaining Claims

Defendant's motion for summary judgment on Plaintiff's claim for exemplary damages (Count 25) is also denied because Defendant's only argument in support of that part of his motion is that there "is no underlying liability to which damages may attach." [75] at 10. Defendant's motion for summary judgment does not address Plaintiff's claim for attorneys' fees and costs (Count 28), and therefore Defendant has not shown that he is entitled to summary judgment on that claim.

## IV.    Conclusion

For these reasons, the Court denies Plaintiff's motion for partial summary judgment [69] and Defendant's motion for summary judgment on all claims [73]. This case is set for status hearing on April 16, 2019 at 9:00 a.m.


Dated: March 29, 2019

_____
Robert M. Dow, Jr.
United States District Judge